```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

Laura M. Pierce,                  :

      Plaintiff,              :

    v.                            :       Case No.  2:14-cv-1989

                                  :       JUDGE GEORGE C. SMITH
Commissioner of Social Security,          Magistrate Judge Kemp

      Defendant.              :

                    REPORT AND RECOMMENDATION

                    I.   Introduction

Plaintiff, Laura M. Pierce, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for supplemental security income and disabled widow's benefits.  Those applications were filed on May 31, 2011, and alleged that Plaintiff became disabled on December 1, 2005.

After initial administrative denials of her claim, Plaintiff was given a video hearing before an Administrative Law Judge on May 29, 2013.  In a decision dated June 6, 2013, the ALJ denied benefits.  That became the Commissioner's final decision on August 19, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on January 16, 2015.  Plaintiff filed her statement of specific errors on February 20, 2015, to which the Commissioner responded on April 23, 2015.  No reply brief was filed, and the case is now ready to decide.

        II.  The Lay Testimony at the Administrative Hearing

Plaintiff, who was 49 years old at the time of the administrative hearing and who has an eleventh grade education, testified as follows.  Her testimony appears at pages 83-105 of the administrative record.

Plaintiff first testified that she had not worked anywhere, including on a volunteer basis, since January of 2011.  She also had not applied for or received unemployment benefits.  She said she could not work because of pain in her back, shoulders, knees, and legs.  She spent most of her time at home lying down.  She was unable to lift or to climb stairs.  No type of treatment had helped to reduce her pain.  She had fallen a number of times because her knees gave out.  She used a cane in the house and a specially-designed walker when out in public.

Three years before the hearing, Plaintiff's daughter had moved in with her to help her out.  Her daughter did laundry and grocery shopping.  Her son also helped with chores like taking out the garbage and making the bed.  She described difficulty in sitting too long due to a tailbone injury.

On a typical day, Plaintiff took her medication in the morning and then slept for four to five hours.  She also had frequent crying spells due to depression.  She was going to have rotator cuff surgery in the future on her left shoulder, and she had recovered about 70% of the use of her right shoulder following similar surgery.  She believed her medication affected her memory.  Lastly, she experienced migraine headaches three or four times per month which lasted four or five hours.

The Administrative Law Judge asked Plaintiff some questions about her past employment.  She said that she cleaned office buildings and worked as a dietary aide in a nursing home.  She was injured on that job when she slipped and fell on a wet floor.

### III.  The Medical Records

The medical records in this case are found beginning on page 323 of the administrative record.  The Court will summarize those records, as well as the opinions of the state agency reviewers, to the extent that they are pertinent to Plaintiff's two statements of error.

A consultative psychological examination was performed by Dr. Tanley on August 30, 2011.  Plaintiff arrived at the examination walking with a cane and reported she had pain and other physical problems.  She reported getting along fine with others in her past jobs.  She was depressed and did not socialize much.  Plaintiff did not cry during the examination and did not express feelings of guilt, hopelessness, helplessness, or worthlessness.  She did report mood problems.  There was no evidence of anxiety.  Dr. Tanley diagnosed an adjustment disorder with depressed mood and rated Plaintiff's GAF at 60.  He said that she could understand task requirements consistent with her level of intellectual functioning, could have some difficulty dealing with increasing complexity, might experience some issues conforming with social expectations in a work setting due to her depression, and would experience some difficulty dealing with work stress although there was no history of mental or emotional decompensation in response to work exposure.  (Tr. 369-73).

There are some counseling notes in the record, but they do not appear to add much to Dr. Tanley's report.  The remainder of the records deal with Plaintiff's physical impairments, which are not at issue here.

Two state agency reviewers expressed an opinion about Plaintiff's mental residual functional capacity.  Both had the benefit of Dr. Tanley's assessment.  The first, Dr. Goldsmith, thought Plaintiff was moderately limited in her ability to understand and remember detailed instructions but could comprehend, remember, and carry out simple 1-4 step task instructions.  He also said that she had moderate limitations in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and complete a normal

workday and work week without interruptions form psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  When asked by the form he was completing to "[e]xplain in narrative form the sustained concentration and persistence limitations" he found to exist, Dr. Goldsmith said that "[w]hile the claimant has some concentration difficulties, clmt is limited to simple tasks that are not fast paced or have strict demands."  Finally, he concluded that she had some adaptation limitations which restricted her to working in a setting in which duties are routine and predictable.  (Tr. 146-48).

The second reviewer, Dr. Umana, phrased Plaintiff's limitations slightly differently.  As far as understanding and memory limitations, she described Plaintiff as being able to understand, remember, and carry out simple instructions and some that are more complex.  Her narrative explanation of the concentration and persistence limitations was this: "Concentration is adequate for routine, repetitive tasks.  Stress tolerance is limited.  Claimant can adapt to work settings in which duties are routine and predictable."  (Tr. 160-61).

### IV.  The Vocational Testimony

Lynne M. Kaufman was the vocational expert in this case. Her testimony begins on page 105 of the administrative record.

Ms. Kaufman first testified about Plaintiff's past work. She said the dietary aide job was medium and unskilled, and a job as a home health care attendant was very heavy and semi-skilled.

Ms. Kaufman was then asked some questions about a hypothetical person of Plaintiff's age, education, and work experience who could work at the light exertional level.  The person could occasionally climb ramps and stairs and occasionally stoop, kneel, crouch, and crawl.  The person could not climb ladders, ropes, and scaffolds and could reach overhead with the

-4-

left upper extremity only occasionally.  That person also had to avoid all exposure to the use of hazardous machinery, operational control of moving machinery, and unprotected heights, and was limited to the performance of simple, routine, repetitive tasks in a work environment where changes take place no more than occasionally.  According to Ms. Kaufman, someone with those limitations could not perform any of Plaintiff's past jobs because they were performed at the medium exertional level or greater.  However, such a person could do jobs like cashier, small product assembler, and light cleaner.  She gave numbers for those jobs in the regional, State, and national economies.

    Ms. Kaufman was then asked if someone who had the same restrictions but was limited to sedentary exertion could work.  She said yes, identifying jobs such as assembler, clerk, and packer.  However, if someone were off task for 20% of the workday, no jobs would be available.  The same would be true for someone who would miss three days per month.  Finally, Ms. Kaufman testified that in order for someone to use a walker at work, the employer would need to grant an accommodation for that.

    V.   <u>The Administrative Law Judge's Decision</u>

    The Administrative Law Judge's decision appears at pages 22-35 of the administrative record.  The important findings in that decision are as follows.

    The Administrative Law Judge found, first, that Plaintiff had not engaged in substantial gainful activity since her application date of May 31, 2011.

    Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including disorders of the back, disorders of the left shoulder, sleep apnea, restless leg syndrome, hypertension, edema, diabetes mellitus, a chronic pain disorder, hyperlipidemia, asthma, headaches, chronic obstructive pulmonary disease, obesity,

fibromyalgia, a substance abuse disorder, depression, an anxiety disorder, and a panic disorder. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level with restrictions. Those included being able only occasionally to climb ramps and stairs and occasionally stoop, kneel, crouch, and crawl, being unable to climb ladders, ropes, and scaffolds, being able to reach overhead with the left upper extremity only occasionally, having to avoid all exposure to the use of hazardous machinery, operational control of moving machinery, and unprotected heights, and being limited to the performance of simple, routine, repetitive tasks in a work environment where changes take place no more than occasionally

The ALJ found that, with these restrictions, Plaintiff could not do her past relevant work. However, she could do the three light jobs identified by the vocational expert - cashier, small product assembler, and cleaner. Alternatively the ALJ determined that if she were limited to working at the sedentary level, she could do jobs such as assembler, clerical worker, or packer. The ALJ further found that all of these jobs existed in significant numbers in the State and national economies. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI. Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises two issues. She asserts that (1) the ALJ erred by not properly weighing the state agency expert medical opinions; and (2) the ALJ's residual functional capacity finding did not take into account Plaintiff's limitations in the area of concentration,

persistence, and pace.  These issues are considered under the following legal standard.

    <u>Standard of Review</u>.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

                      A.   <u>State Agency Medical Opinions</u>

    Plaintiff makes a straightforward argument concerning the ALJ's evaluation of the state agency medical opinions.  She points out, first, that Dr. Goldsmith and Dr. Umana differed slightly on how they interpreted her limitations as to concentration, persistence, and pace: Dr. Goldsmith would have

-7-

limited her to work that was not fast-paced or had strict demands, whereas Dr. Umana thought that Plaintiff could function adequately in a work setting where the duties were routine and predictable - and in which, by negative implication, the duties could be fast-paced or subject to strict demands.  Plaintiff then argues that the ALJ's decision did not appear to acknowledge this difference, and the ALJ did not provide any explanation for incorporating Dr. Umana's, rather than Dr. Goldsmith's, opinion into the residual functional capacity finding.  She suggests that a remand is needed so that the ALJ can provide this explanation, and also so the ALJ can indicate how much weight was given to each of these (and Dr. Tanley's) opinions, instead of stating (as the administrative decision recites) that each were "generally credible" (Tr. 31).  The Commissioner responds that the explanation for this choice is implicit in the ALJ's decision and reflects the fact that Dr. Tanley did not impose any pace-based restrictions, that his opinion, as an examining source, was entitled to greater weight than that of either of the state agency reviewers, and that it was reasonable for the ALJ to choose the state agency opinion which was more consistent with Dr. Tanley's view.

    The applicable regulation, 20 C.F.R. §416.927(c), states that "[r]egardless of its source, [an ALJ] will evaluate every medical opinion ...."  It lists various factors to be used when weighing medical opinions, but it does not, by its terms, require an ALJ specifically to state, in exactly those words, the weight given to each.  The Court of Appeals has required an ALJ to state, for a treating source opinion, how much weight is given to that opinion if it is not accorded controlling weight, see, e.g., Blakley v. Comm'r of Social Security, 581 F.3d 399, 406 (6th Cir. 2009), but there does not appear to be a comparable requirement that, in fulfilling the regulatory duty to "evaluate" other

medical opinions, the ALJ assign them some specific amount of weight.

Even if such a statement were technically required, the failure to include it in the administrative decision can be harmless error. That analysis has been applied to a failure to state explicitly the weight being given to a treating source opinion, see, e.g., Nelson v. Comm'r of Social Security, 195 Fed.Appx. 462, 47-71 (6th Cir. Aug. 28, 2006), where the record was clear enough to permit a reviewing court to determine both what weight the ALJ actually assigned to the treating source opinion, and why. Here, the ALJ found all of the psychological opinion evidence to be "generally credible" and provided reasons for that finding, which Plaintiff does not appear to contest. Consequently, the fact that the ALJ did not state explicitly that he accorded great or significant weight to these opinions is not a basis for remand.

The balance of Plaintiff's argument on this point relates to the ALJ's failure to acknowledge, explicitly, that there was a conflict between Dr. Goldsmith's and Dr. Umana's opinions and that fact that he did not explain how that conflict was resolved. The Commissioner's response appears to rest on the notions that the ALJ implicitly resolved the conflict by tailoring the RFC finding to Dr. Umana's opinion and that substantial evidence supports that resolution.

As to the latter point, the Court agrees that it would have been reasonable for the ALJ to find, consistent with Dr. Tanley's opinion, that Plaintiff was not quite as limited in the area of work pace as Dr. Goldsmith indicated, and that she could work in the type of setting described in Dr. Umana's narrative. Addressing the first point, courts have held that the failure to provide an explicit rationale for choosing between the competing opinions of non-treating sources is not necessarily a fatal error. It is, of course, better practice for an ALJ explicitly

to acknowledge that conflicts, even relatively slight ones like the ones involved in this case, exist, and say why one opinion was preferred over another.  When the conflict is between opinions from non-treating sources, the "ALJ was required only to acknowledge that [one of the source's] opinions contradicted the ALJ's RFC finding, and explain why he did not include [those] assessed limitations in his determination of Plaintiff's RFC." Ortiz v. Colvin, 2015 WL 3646048, *9 (N.D. Ohio June 16, 2015). However, when an ALJ "merely failed to explain why he favored several examining physicians' opinions over another's ... there is no reason to depart from the usual harmless-error rule." Kornecky v. Comm'r of Social Security, 167 Fed.Appx. 496, 507 (6th Cir. Feb. 9, 2006).

Applying that analysis here, it is clear that the ALJ understood that both Dr. Goldsmith and Dr. Umana had expressed opinions - both are referred to at Tr. 31 - and that both had given great weight to Dr. Tanley's assessment.  It is also clear that Dr. Tanley found no evidence to suggest that Plaintiff had pace-based restrictions, at least when she was carrying out simple instructions consistent with her level of intellectual functioning.  The ALJ made a rational choice not to include such restrictions in the RFC.  Any error involved in failing to explain how the ALJ arrived at that decision is, in the Court's view, harmless; a remand would not likely produce a different substantive result, and the error did not materially affect the decision.  Consequently, there is no merit to Plaintiff's first claim of error.

        B.   Residual Functional Capacity Finding

Plaintiff's second claim of error is closely related to her first.  Citing to Ealy v. Comm'r of Social Security, 594 F.3d 504 (6th Cir. 2010), she argues that it was error for the ALJ not to include moderate restrictions in the area of concentration, persistence, and pace in the hypothetical question asked to Ms.

-10-

Kaufman, and that restricting Plaintiff to the performance of simple, routine, repetitive tasks, even in a routine and predictable work setting, is insufficient to account for such deficiencies.

To the extent that Plaintiff repeats her argument that the ALJ neither acknowledged nor explicitly resolved the conflict between Dr. Goldsmith's and Dr. Umana's opinions, the Court has already resolved that issue.  Further, in this case, unlike in Ealy, Dr. Umana expressly stated that the limitations caused by Plaintiff's difficulties in the area of concentration, persistence, and pace could be accommodated by restricting her to work in a stable environment.  That is far different than the specific pace-based restriction imposed by the medical opinions in Ealy, and the ALJ was entitled to rely on Dr. Umana's narrative opinion in crafting both a residual functional capacity finding and the hypothetical question posed to the vocational expert.  The Court therefore finds no merit to Plaintiff's second claim of error.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein,

may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                                            /s/ Terence P. Kemp
                                            United States Magistrate Judge